NEBRASKA NATIONAL BANK V. LOGAN ET AL.

[FILED APRIL 1, 1890.]

1. **Banks:** CHECKS: DISHONOR: DILIGENCE. L. & S., residents of V., in this state, on Friday, November 16, sent by mail a check on a bank at V. to M. B. & Co. at O., Neb. This was received by M. B.. & Co. on the next day. The payee on the same day endorsed the check and delivered it to the Nebraska National Bank at O., which, on the same day, transmitted the same by mail to the bank at V., on which it was drawn, for payment. On Tuesday, November 20, the bank at V., in payment of the check, sent a worthless draft to the bank at O., which the latter refused to receive, and on the same day notified M. B. & Co. of that fact, and on the next day notified L. & S. The testimony showed that the bank at V. was in a failing condition when L. & S. drew and sent the check on it and that they stated that fact to M. B. & Co. in the letter transmitting the check. In an action against the drawers they demurred to the petition. *Held*, That if the facts stated in the petition were true, the Nebraska National Bank had shown due diligence and was entitled to recover.

2. ———: ———: NEGLIGENCE: PLEADING. The facts as to the alleged neglect of the Nebraska National Bank in the selection of the payee of the check, as its agent for the collection of the same, should be set up by answer, and do not appear from the statement in the petition in such a manner as to defeat a recovery.

ERROR to the district court for Douglas county.    Tried below before HOPEWELL, J.

*Savage, Morris & Davis,* for plaintiff in error.

*McGilton & Stoddard, contra.*

MAXWELL, J.

A general demurrer to the petition was sustained in the court below and the action dismissed. The petition is as follows:

" The plaintiff states:

" 1st. It is a corporation organized under the laws of the United States relating to national banking associations, located and doing a banking business at Omaha, Nebraska.

" 2d. The defendants G. W. Logan and H. L. Stanton are copartners doing business at Valparaiso, Nebraska, under the firm name of Logan & Stanton.

" 3d. The defendant McCord, Brady & Co. is a copartnership doing business at Omaha, Nebraska.

" 4th. On Friday, November 16, 1888, the defendants Logan & Stanton, at Valparaiso, Nebraska, drew their check as a copartnership for the sum of $481.75, payable to the order of McCord, Brady & Co., upon the State Bank of Valparaiso, Nebraska, about seventy miles from Omaha, and mailed the same to McCord, Brady & Co. on Saturday, the 17th of November, 1888.

" 5th. On said 17th of November the said McCord, Brady & Co. indorsed said check and sold and delivered the same to the plaintiff, who paid the full amount thereof to said McCord, Brady & Co.

"6th. On the said Saturday, the 17th of November, 1888, the plaintiff sent said check by mail to said State Bank of Valparaiso, with instructions to remit the amount thereof to the plaintiff.

"7th. On Tuesday, November 20, said State Bank of Valparaiso sent to plaintiff a worthless draft on the German National Bank of Lincoln for the amount of said check, which was received by the plaintiff on Wednesday, the 21st of November, 1888, but plaintiff refused to accept said draft, and notified McCord, Brady & Co. on the same day that payment had not been made on said check and that plaintiff would look to them for payment thereof. That plaintiff also on the 22d day of November, 1888, notified the said Logan & Stanton of the non-payment of said check, and that the plaintiff as holder of said check would look to them for the payment of the same, and demanded payment thereof. That plaintiff has been unable to recover possession of said check, and hence cannot set out a copy thereof.

"8th. That at the time said Logan & Stanton drew said check the said State Bank of Valparaiso was in a failing condition and suspension of business by it was imminent, which facts were well known to said Logan & Stanton, and in their letter of remittance to McCord, Brady & Co. they urged them to take action at once for the collection thereof; that plaintiff was not aware of the failing condition of said bank until Wednesday, the 21st of November, and said McCord, Brady & Co. did not communicate said advice so given to them to the plaintiff.

"9th. That in receiving and transmitting said check to said State Bank of Valparaiso and in giving notice to the defendants, the plaintiff adopted the usual custom of banks and used all due proper and reasonable care and diligence."

It will be observed that the allegations of the petition are in substance that Logan & Stanton, who were residents of Valparaiso, on Friday, November 16, sent a check to

McCord, Brady & Co. at Omaha.  On the next day Mc-
Cord, Brady & Co. indorsed the same and delivered it to
the plaintiff, who the same day sent it by mail to the
drawee for payment.  This check was received by the
drawee on Tuesday, November 20, and was paid by a
worthless draft on the German National Bank of Lincoln.
This was transmitted to the plaintiff and received by it on
Wednesday, the 21st of November.  The particular cause
for refusing this draft does not appear, but it is probable
that the Valparaiso bank had no funds to draw against.
Whatever the cause, it was deemed to be worthless and the
plaintiff refused to receive it, and on the same day notified
McCord, Brady & Co. of that fact, and on the next notified
Logan & Stanton.  This would seem to be due diligence
under all the circumstances of the case.

The principal contention of the defendants in error is
that the plaintiff, having sent the check by mail to the
payee, it thereby made the latter its agent and it must
bear any loss arising after the time when the check could
have been presented by express or other usual methods,
and it is asserted that had the check been presented in the
usual way it would have been paid.  If such was the case
it should be pleaded in the answer.  It is properly a mat-
ter of defense and does not arise in this case.

If the allegations of the petition are true the bank at
Valparaiso was in a failing condition when the check was
drawn, and the drawers, residents of the place where the
bank was situated, were aware of that fact, although they
must have known that several days necessarily would in-
tervene before the check could be returned from Omaha
and payment thereof demanded.

Nearly all the cases cited relate to transactions by which
the bill failed of collection, by reason of neglect to make
demand at the day, or notice of non-payment, or because
the agent by his default failed to collect the money.

In *Hughes v Kellogg*, 3 Neb., 186, where the holder of a

check called at the bank and received a certificate of deposit for the amount, and the bank failed the next day, it was held that he must stand the loss. That case, no doubt, was correctly decided, as the holder of the check instead of drawing the money due thereon, made himself a creditor of the bank by placing the proceeds of the check therein to his credit. The facts, as shown by the petition, however, do not bring it within the case cited. Neither do the facts stated in the petition raise the question as to who is to be responsible for default or neglect where a bank selects its agents to collect a bill or draft and the money is lost through the neglect of such agents, and we will not decide it in advance.

In a note to *Simpson v. Walbdy*, 30 N. W. R., 206, the case of *Guelick v. Burlington National Bank*, 9 N. W. R., 328, is credited to this court, which is a mistake.

The bank being in a failing condition when the check in question was drawn, there is no allegation or presumption that it would have been paid if presented to the drawee by a third party instead of being sent directly to the bank, or that Logan & Stanton have sustained any injury by the mode of procedure adopted. Whatever defenses may exist, therefore, must be set up by answer.

The judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED AND REMANDED.

THE other judges concur.